UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JULIE DAVIDSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:21-CV-374-HAB |
| ) | |
| TIMOTHY W. BUSCHERT, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff was rear-ended by a tractor-trailer driven by Defendant Timothy Buschert ("Buschert") while in the course and scope of his employment with AJ Pallet, LLC ("AJ"). Suit was filed in an Indiana state court and removed here based on diversity jurisdiction. Plaintiff then amended her complaint, and that amended complaint includes a request for "exemplary damages." (ECF No. 26 at 6). Defendants now move for partial summary judgment on the punitive damages issue. (ECF No. 35). That motion is now fully briefed (ECF Nos. 36, 40, 43) and ripe for ruling.

**I.     Factual Background[1]**

**A.     *The Accident***

The facts of the accident, taken in a light most favorable to Plaintiff, are as follows. In November 2020, Buschert was driving his 26,000-pound tractor-trailer eastbound on US 6 near LaPorte, Indiana. As he crested a hill at the intersection of US 33 and US 6, he could see Plaintiff's vehicle stopped nearly 1,800 feet away as Plaintiff waited to turn left. The weather was clear, the

---

[1] Defendants also seek to exclude the opinions of Plaintiff's expert Walter Guntharp ("Guntharp"). (ECF No. 36 at 12–19). This "embedded" motion violates this Court's local rules. *See* N.D. Ind. L.R. 7-1(a). The Court also finds that, even if Guntharp's opinions are considered, there are no genuine issues of material fact and Plaintiff is not entitled to punitive damages. The motion to exclude is DENIED as moot.

road was dry, and nothing in the roadway obscured Buschert's vision. Buschert claims that he was not tired, distracted, using electronic devices, or cruise control at the time of the accident.

Buschert testified that he was driving at 55 miles per hour when he crested the hill, slowing to 45 miles per hour. The posted speed limit for this section of US 6 was 50 miles per hour. He testified that, while he applied "some" breaks after cresting the hill, he did not apply the breaks "completely," or enough to leave skid marks, until he realized that he would be unable to avoid Plaintiff's car because of ditches on both sides of the road. The tractor-trailer did not stop in time, striking the rear of Plaintiff's vehicle and sending it off the roadway.

Plaintiff's accident reconstruction tells a different story. That reconstruction shows that Buschert did not break until he was just 31 feet from Plaintiff's vehicle. The reconstruction also estimates Buschert's speed at 62 miles per hour before he applied his brakes.

**B.**     ***Buschert's Hiring and Training***

Buschert was hired by AJ in July 2020. In his application, Buschert disclosed that he had been in an accident in December 2016, but told AJ that it was not his fault. The parties dispute whether this accident made Buschert unemployable under AJ's hiring policies. It is undisputed that AJ did not hire drivers with "bad" driving records, but it's not clear if one accident left Buschert with a "bad" driving record. Buschert also had citations for failure to yield the right of way, disobeying a traffic signal, and speeding. These citations were old, ranging from 1998 to 2007. Despite the accident and citations, AJ received the go-ahead to hire Buschert by a third-party vendor that AJ regularly used to conduct records and background checks on prospective drivers.

There is also a dispute over the extent of Buschert's training. Buschert claims that his only on-the-job training was a 90-minute session where he was shown the inside of the truck, taught to hook up the trailer, and then drove the tractor-trailer down the road before returning to the shop.

2

AJ states that a supervisor drove with Buschert on deliveries for two days, around 10 hours. AJ chalks up the limited training to Buschert's experience as a truck driver.

In August 2020, Buschert received a speeding ticket while driving for AJ. AJ told its drivers to report all traffic violations but had no written policy. It doesn't appear that Buschert reported this speeding ticket, as AJ claims that it didn't know about the ticket before Plaintiff's accident.

## II. Legal Discussion

### A. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid

3

"the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Judge Robert Miller succinctly stated the considerations this Court must undertake where, as here, the issue on summary judgment is one of a defendant's state of mind.

> Courts must be circumspect in approaching summary judgment motions that turn on a party's state of mind, but the party on whom the burden of proof would rest at trial still bears the burden of coming forth with evidence sufficient to establish the requisite mental state. Further, since Indiana law requires a plaintiff to prove her entitlement to punitive damages by clear and convincing evidence, the court must consider whether the plaintiff's summary judgment showing would allow a trier of fact to find that she has met that burden.

*Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587, 600 (N.D. Ind. 1993).

**B.    *Plaintiff has no Punitive Damages Claim Against Buschert***

Sitting in diversity, this Court must apply Indiana substantive law. *Hahn v. Walsh*, 762 F.3d 617, 629 (7th Cir. 2014). Under Indiana law:

> Unlike compensatory damages, which are intended to make the plaintiff whole, punitive damages have historically been viewed as designed to deter and punish wrongful activity. In tort actions, punitive damages may be awarded upon a showing of willful and wanton misconduct such that the defendant subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences. Or where the defendant acted maliciously, fraudulently, oppressively, or with gross negligence and the conduct was not the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other such noniniquitous human failing. But punitive damages are not commonplace and rarely appropriate.

*Yost v. Wabash Coll.*, 3 N.E.3d 509, 523–24 (Ind. 2014) (quotations and citations omitted). Punitive damages must be shown by clear and convincing evidence, a burden that is "but minutely below the 'reasonable doubt' standard." *Westray v. Wright*, 834 N.E.2d 173, 180 (Ind. Ct. App. 2005) (quoting *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019, 1022 (Ind. 1986)).

4

Plaintiff points to two factors she believes would allow a jury to impose punitive damages. She notes Buschert's speed, which the reconstruction puts at least 12 miles per hour over the posted speed limit. But primarily she emphasizes that, from the time he crested the hill, Buschert had nearly 20 seconds to stop his truck but failed to do so. Taken together, Plaintiff argues that these facts show a "conscious, voluntary decision" not to avoid the accident. (ECF No. 40 at 13).

The Court first notes that neither speeding nor inattention can support an award of punitive damages on their own. Speeding "merely constitutes evidence that [a driver] failed to act reasonably under the circumstances, and does not, without more, support the inference that [a driver] knew that his rate of speed constituted an obvious danger yet chose to ignore that danger." *Wanke*, 836 F. Supp. at 604. And for more than a century the Indiana Supreme Court has delineated between inattention and willfulness. "Willfulness does not consist in negligence; on the contrary, . . . the two terms are incompatible. Negligence arises from inattention, thoughtlessness, or heedlessness, while willfulness cannot exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence cannot be of such a degree as to become willfulness." *Parker v. Penn. Co.*, 34 N.E. 504, 506 (Ind. 1893); *see also Wilkerson v. Harvey*, 814 N.E.2d 686, 693 (Ind. Ct. App. 2004) (describing the duty to maintain a proper lookout as the "duty of exercising ordinary care"), *Schultz v. Hodus*, 535 N.E.2d 1235. 1237–38 (Ind. Ct. App. 1989). Separately, both of Plaintiff's alleged bases for punitive damages are purely negligence.

Plaintiff tries to defeat this conclusion, at least as to inattention, by pointing to Judge Lozano's reference to "momentary" inattention in *Boyle v. Infrasource Constr., LLC*, 3:13-cv-732-RL, ECF No. 41 (N.D. Ind. Dec. 3, 2014). In his order, Judge Lozano found that "Indiana case law does not support the issuance of punitive damages on defendants involved in vehicle collisions

5

unless, at the time of the incident, the vehicle operator was speeding, their inattention was more than momentary, or a foreign substance impaired them." *Id*. at 15. Plaintiff argues that, since the evidence shows that Buschert failed to act for nearly twenty seconds, his inattention was not momentary and can support punitive damages.

The Court cannot agree with the distinction Plaintiff seeks to draw. The Court has tried, but cannot, locate any Indiana case law that distinguishes between "momentary" and "not momentary" distraction in the punitive damages context. None of the cases string-cited by Judge Lozano following the quoted passage establish that distinction. The closest case in that string cite is *Austin v. Disney Tire Co., Inc.*, 815 F. Supp. 285 (S.D. Ind. 1993). *Austin*, like this case, was a semi-versus-car accident at an intersection. The semi driver, Joseph Campbell ("Campbell") claimed that, as he approached the intersection, the light was green. He glanced down at some paperwork and, when he looked up, the light had turned yellow. He applied his brakes and honked his horn but could not avoid the accident. The plaintiff submitted affidavits contesting much of Campbell's testimony and claimed that the affidavits "raise[d] genuine issues of fact whether Campbell crossed the white stop line after the light changed to red, whether Campbell honked his horn throughout the intersection, whether Campbell applied his brakes when approaching the intersection, and whether Campbell drove at an excessive rate of speed." *Id*. at 287.

Judge Tinder granted summary judgment for the defendants on the issue of punitive damages. He found no evidence that would permit a jury to find that Campbell "acted with a mental state necessary to impose punitive damages upon him." *Id*. at 289.

> There is no evidence that Campbell was joy riding, drag racing, or intentionally running red lights; indeed, there is no evidence that Campbell was even speeding immediately prior to the accident. If the evidence were to raise the reasonable inference that Campbell approached a red light, saw the cross-traffic, recognized the danger, and yet decided to try to "gun it through" the intersection for some

> selfish reason, then this would be a different case. The evidence does not even remotely raise that kind of inference.

*Id*. at 289-90.

The Court finds that Judge Tinder's analysis resolves this case, particularly since Plaintiff has pointed to no similar case in which a jury had a right to consider punitive damages. While there is some evidence that Buschert was speeding, there is no evidence that his driving before the accident was anything more than negligent. Buschert wasn't joy riding, drag racing, or intentionally failing to stop. There is no evidence that he recognized the danger posed by Plaintiff's vehicle and intentionally chose not to brake until it was too late. As in *Austin*, the evidence doesn't remotely raise those kinds of inferences.

Even Plaintiff's own accident reconstructionist proposes a non-punitive explanation for the accident. In his affidavit, the reconstructionist states:

> As to distraction, when distracted drivers point their gaze at objects in the environment, they often fail to "see" them because attention has been diverted to the distracting acts which can include looking at, or manipulating, objects in the vehicle, as opposed to the external environment. Distraction can occur as a result of a host of actions, not only cellular telephone use. This is also referred to as "inattention-blindness." Driver distraction is associated with increased reaction time, decreased situational awareness, shrinks a person's search area, increases limb movement time, and decreases the intensity of a response (as was the case with Mr. Buschert).

(ECF No. 41-1 at 6). Leaving aside that there is no evidence that Buschert was "manipulating objects in the vehicle," what the reconstructionist describes is inattention. As established above, inattention has been the very definition of negligence in Indiana for one hundred and thirty years. If this expert opinion is correct, then it precludes the award of punitive damages.

Nothing in Plaintiff's designation of evidence suggests, much less establishes by clear and convincing evidence, that Bushert had the requisite mental state to support punitive damages.

Instead, it describes an accident. An avoidable accident, maybe, but that's what compensatory damages are for. The jury will not be permitted to consider punitive damages against Buschert.

C.      *Plaintiff has no Punitive Damages Claim Against AJ*

Plaintiff also wants to present a punitive damages claim against AJ. She suggests two bases for punitive damages against Buschert's employer. The first, vicarious liability, is a non-starter given the preceding section of this opinion. The second, a negligent hiring and retention claim, has little more merit.

Plaintiff bases her entire argument on *Denton v. Universal Am-Cam, Ltd.*, 146 N.E.3d 103 (Ill. Ct. App. 2019). Let's start with the obvious: a decision by an Illinois intermediate appellate court interpreting Indiana law is not binding on this Court under diversity rules. Not even decisions by *Indiana* intermediate appellate courts are binding. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Even the Illinois Court of Appeals in *Denton* understood the lack of precedential value between decisions of this Court and that one. *Denton*, 146 N.E.3d at 114, n.7. *Denton* is only interesting, then, if it accurately states Indiana law and puts forward a compelling legal analysis that applies here.

Whether *Denton* accurately states Indiana law, nothing about its discussion of the law compels its application here. First, the procedural posture of *Denton* was importantly different. There, the trucking company moved to set aside a $35 million punitive damages verdict. Under Illinois law, that verdict could be overturned only if "no contrary verdict based on that evidence could ever stand," "there is a total failure or lack of evidence to prove any necessary element of the plaintiffs' case," or "when the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary and not based upon any of the evidence." *Id*. at 113. The federal summary judgment standard is not so deferential to Plaintiff's case.

8

But more importantly, the facts of *Denton* are not the facts here. Consider the driver's history in that case:

> Johnson held a commercial driver's license from South Carolina even though he had never completed a truck driving course. Within three years of applying to UACL, Johnson was involved in four accidents, had three moving violations, and had his license suspended twice. Johnson's application only listed two accidents, no moving violations, and one license suspension. Within 10 years, he was employed by seven different companies, but his application listed six. And even though his application listed one termination, Johnson testified that he was never fired. Conversely, Johnson was actually terminated from four of those seven companies for reasons that included tailgating a motorist, a felony conviction, too many points on his license, and crashing into a vehicle after refusing to let it merge onto an interstate ramp. Regarding the last incident, Johnson testified, "I don't have to let nobody off a ramp."
>
> In the seven years prior to applying at UACL, Johnson was convicted of nine traffic-related offenses, notably, three for speeding and one for speeding more than 10 miles per hour over the speed limit. Additionally, he was convicted of disobeying an official traffic device, failing to pay a speeding ticket or otherwise appear, turning unlawfully, improperly parking, and not wearing a seatbelt. Johnson was also convicted of four counts of "felony reckless aggravated assault" on November 29, 2004, for attempting to break, with a tire thumper, the headlights on a vehicle occupied by four women. Johnson testified that while he was driving a truck, a car was tailgating him on the highway with its high beams on so he pulled off "to bust its headlights . . . for blinding [him]." Johnson testified that as a result of the conviction, he learned to ignore those "ignorant people, out [there] on the interstate, that don't know nothing about driving a truck." Three weeks later, Johnson was convicted of "misdemeanor assault and battery of high and aggravated nature."

*Id*. at 107–08. Yikes. Based on that history, UACL's safety coordinator put Johnson's application in a "no hire" file. But despite this "unequivocal" rejection, UACL's safety director chose to hire Johnson because UACL was "forced to accept 'marginal drivers' in order to make a profit." *Id*. at 108. Johnson had five warning violations within weeks of his hiring, refused to attend mandatory safety training, and then received a speeding ticket, three moving violations, a logbook violation, and had his license suspended. UACL continued to dispatch Johnson even while his license was suspended.

While Buschert will never make a living as a driving instructor, his driving history is nothing like the history that supported punitive damages in *Denton*. Pre-AJ, Buschert had one accident and three more-than-a-decade-old traffic infractions. Despite that record, AJ received a positive hiring recommendation from its third-party vendor. After hire, Buschert had a single violation. By the Court's count, Buschert had three fewer accidents (one), three fewer license suspensions (zero), eleven fewer infractions (three), four fewer felony convictions (zero), and one fewer misdemeanor conviction (zero) than Johnson. And perhaps more importantly from a punitive damages analysis, there is no evidence that AJ continued to employ a "marginal driver" for profit purposes.

The Court agrees with Defendants that this case is much more like *Westray*, an Indiana Court of Appeals decision. There, the plaintiff alleged that punitive damages were appropriate against a trucking company (Bekins) because of the driver's (Westray) history of logbook, speeding, and equipment violations, coupled with the lack of reprimands by the company. *Westray*, 834 N.E.2d at 181. The Indiana Court of Appeals rejected the argument that these facts could support punitive damages, explaining:

> There is simply no evidence to support an award of punitive damages against Bekins directly. The Wrights failed to offer clear and convincing proof that Bekins consciously disregarded knowledge that Westray was a substantial danger to motorists so as to support punitive damages. As to Westray's hiring, there was no evidence that he lacked a valid driver's license or was otherwise unqualified. Moreover, pursuant to Bekins's regulations—more stringent than federal requirements—Westray was qualified and competent to drive. There was no evidence in the record suggesting that the circumstances surrounding Westray's previous accidents or speeding tickets involved substantially similar conduct or circumstances to this case. Ultimately, therefore, the punitive damages award was inappropriate insofar as it was designed to punish Bekins directly.

*Id*.

So it is here. Buschert was a licensed and qualified truck driver. There is no evidence in the record linking his prior driving violations to this accident. AJ may have been negligent in its hiring and retention of Buschert, but there is no basis to punish the company with punitive damages.

### III. Conclusion

For these reasons, Defendant's motion for partial summary judgment on punitive damages (ECF No. 35) is GRANTED.

SO ORDERED on August 16, 2023.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT